UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LE BONITAS S.P.A.,<br><br>          Plaintiff,<br><br>     - against -<br><br>PARIS HILTON ENTERTAINMENT INC.,<br><br>          Defendant. | Case No. 10 Civ. 9350 (AKH)<br><br>ECF CASE<br><br>**COMPLAINT**<br><br>**Trial by Jury Demanded** |

Plaintiff Le Bonitas S.p.A. ("Le Bonitas"), by its attorney, Martin Garbus, counsel to Eaton & Van Winkle LLP, as and for its complaint in the above-entitled action, hereby alleges as follows:

## PARTIES

1. Le Bonitas is a company organized under the laws of Italy, with its principal place of business at Via Bologna, 110/a-59100, Prato, Italy.

2. Defendant Paris Hilton Entertainment Inc. ("PHE") is a California corporation with a principal place of business at 250 North Canon Drive, Beverly Hills, California 90210.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over the state law claim asserted in this action based on diversity of citizenship pursuant to 28 U.S.C. §1332(a) because the matter in controversy (a) exceeds the sum or value of $75,000, exclusive of interest and costs, and (b) is between a citizen or subject of a foreign State, on one side, and a citizen of a State of the United States on the other side.

4. The Court has personal jurisdiction over PHE by reason of, inter alia, its consent to jurisdiction by written contract between the parties.

5.     This District is a proper venue for this action pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District and by reason of PHE's consent to venue in this District by written contract between the parties.

## FACTS COMMON TO ALL CLAIMS

6.     The parties entered into a written license agreement as of February 1, 2009 ("the License Agreement").

7.     Pursuant to the terms of the License Agreement, Le Bonitas was granted a non-exclusive license to use the name, image, personal likeness, voice, expressions, photographs, symbols, designs, logos, copyrights, trade names, trade dress, slogans, packaging and trademarks pertaining to Paris Hilton (the "Property") in order sell women's lingerie, sleepwear and beachwear ("Licensed Articles") in certain territories for a definite term.

8.     Pursuant to the terms of the License Agreement, in consideration for Le Bonitas' license to use the Property to sell Licensed Articles, PHE received the right upon signing to an advance payment of € 97,500 and to receive certain minimum royalty payments from Le Bonitas and other royalty payments from sales over the course of the term of the Licensing Agreement.

9.     The advance payment of € 97,500 was paid by Le Bonitas to PHE in accordance with the terms of the License Agreement.

10.    Pursuant to Section 14.1 of the Licensing Agreement, the parties agreed that Le Bonitas would begin the manufacture, distribution and sale of the Licensed Articles on or before the "Distribution Start Date" of January 1, 2010.

11.     Pursuant to Section 5.1 of the Licensing Agreement, the parties also agreed that Le Bonitas would submit to PHE all items (including but not limited to products, packaging, labeling, point of sale materials, trade show displays, sales material and advertising) bearing or incorporating the Property and that PHE had the right, in its sole discretion, to give advance written approval of such items at the concept stage, the final art stage, and the final physical stage pursuant to certain rules applying to all stages of the approval process.

12.     Pursuant to Section 5.1(2) of the Licensing Agreement applicable to the approval process, PHE had ten business days within which to "review and respond in writing to each of [Le Bonitas'] submissions.  If [PHE] does not respond to such submission within such ten (10) day business period, such submission shall be deemed disapproved."

13.     Pursuant to Section 21 of the Licensing Agreement, the parties expressly agreed that, in their respective dealings with one another, they would "act in good faith and fair dealing."

14.     PHE retained The Beanstalk Group, LLC ("Beanstalk") as its licensing agent and Beanstalk was expressly designated as such by PHE with respect to the administration of the License Agreement.

15.     Le Bonitas received from Beanstalk a "Licensee Welcome Pack" which set forth, inter alia, "product/marketing approval procedures" for the product approval process.

16.     Consistent with Section 5.1(2) of the Licensing Agreement, the "product/marketing approval procedures" section of the Licensee Welcome Pack stated

that "[w]hen submitting materials for approval, please allow for the contractual turnaround time of 10 business days for a response" but that "most clients respond before this time frame."

17. Fall/Winter fashion products are successfully and profitably sold through retail markets by reason of, <u>inter alia</u>, their exhibition during traditional trade fairs taking place during January and February, and consequently any proposed collection must be finalized well in advance during the preceding year.

18. The Distribution Start Date of January 1, 2010 also compelled that any proposed collection had to be finalized well in advance during the preceding year.

19. Upon entering into the License Agreement, Le Bonitas immediately undertook to develop a Fall/Winter collection of women's lingerie using the Property with the intention of showing the collection at the traditional industry trade fairs taking place at the beginning of 2010, as was within the reasonable expectations of the parties at the time of contracting.

20. Throughout 2009, Le Bonitas acted in good faith and devoted its best efforts to develop a Fall/Winter collection of women's lingerie and engage in the approval process required by the License Agreement.

21. Throughout the spring, summer and fall of 2009, Le Bonitas encountered frequent and numerous difficulties in developing the Fall/Winter collection from concept through to production in a creatively fluid, efficient and cost-effective manner because PHE did not engage in good-faith in the approval process by failing or refusing to "review and respond" to required submissions with approvals, rejections or comments/feedback in a timely fashion.

22. Despite these difficulties, by early October 2009, Le Bonitas was able to submit to PHE a CD containing a final stages presentation of, <u>inter</u> <u>alia</u>, prototypes and product samples for the collection in order to receive either final approvals or comments in sufficient time to incorporate them, manufacture the samples and show the collection at the industry trade fairs as planned and as contemplated by the parties.

23. On or about October 8, 2009, Beanstalk acknowledged on behalf of PHE having received from Le Bonitas the CD containing the final stages presentation for approvals.

24. On or about October 28, 2009, Beanstalk acknowledged that Paris Hilton had been travelling and had not even reviewed the presentation, let alone responded with approvals, rejections or comments/feedback.

25. Without any response whatsoever from PHE, Le Bonitas could not, as a both practical matter and as a matter of contract, proceed with any further development of the collection.

26. On or about November 20, 2009, PHE, through Beanstalk, finally gave limited comments, but only with respect to inspirational boards for the collection.

27. By not reviewing and responding regarding the CD presentation from the period of October 8 through November 19, 2009 and giving only limited comments thereafter, PHE had, <u>de</u> <u>facto</u>, refused to engage in the approval process in any substantive, meaningful, constructive or commercially reasonable way.

28. By not reviewing and responding regarding the CD presentation from the period of October 8 through November 19, 2009 and giving only limited comments

5

thereafter, PHE, in effect, halted or suspended the approval process without any contractual right or entitlement.

29. PHE's refusal to engage in and suspension of the approval process required by the Licensing Agreement rendered it impracticable for Le Bonitas to bring the collection to the apparel marketplace in time to properly exhibit it in a manner which is usual and customary in the fashion industry, was within the reasonable expectations of the parties, and which might render the collection profitable to Le Bonitas.

30. The absence of any collection from the Fall/Winter marketplace also rendered impossible Le Bonitas' ability to build on its success for a Spring/Summer collection in 2010, as is typical and customary in the fashion industry and was within the reasonable expectations of the parties.

31. Le Bonitas has suffered significant damages by reason of PHE's refusal to engage in the approval process required by the Licensing Agreement with respect to the Fall/Winter collection and because PHE halted or suspended the approval process without any contractual right or entitlement.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

32. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 hereof as if fully set forth herein.

33. Le Bonitas and PHE entered into the License Agreement, pursuant to which Le Bonitas was granted a non-exclusive license to use the Property in order sell Licensed Articles and PHE was granted the right to an advance payment and to receive certain other minimum royalty payments.

34. Pursuant to Section 5 of the Licensing Agreement, PHE had the right to give advance written approval over all items bearing or incorporating the Property and the obligation to review and respond within no more than ten business days of each submission.

35. Pursuant to Section 14.1 of the Licensing Agreement, Le Bonitas had the obligation to begin the manufacture, distribution and sale of the Licensed Articles on or before the Distribution Start Date of January 1, 2010.

36. Pursuant to Section 21 of the Licensing Agreement, the parties expressly agreed that, in their respective dealings with one another, they would "act in good faith and fair dealing."

37. Pursuant to the terms of the Licensing Agreement as a whole and read together, PHE had the obligation to engage in the approval process with Le Bonitas and to do so in good faith, including but not limited to, timely, cooperatively and collaboratively reviewing and responding to submissions to permit Le Bonitas to develop and finalize collections and bring them to the marketplace, as was within the reasonable expectations of the parties and in accordance with industry norms and standards.

38. Le Bonitas performed all of its obligations under the Licensing Agreement.

39. PHE breached its obligations to engage in the approval process with Le Bonitas, to do so in good faith, and to timely, cooperatively and collaboratively review and respond to submissions.

40. PHE wrongfully and without any contractual right or entitlement suspended the approval process with Le Bonitas.

41. The aforementioned breaches and wrongful conduct on the part of PHE were

material.

42.   By reason of PHE's breaches of contract, Le Bonitas has not received the benefit of its bargain.

43.   By reason of PHE's breaches of contract, Le Bonitas has been caused to suffer damages, including the advance payment to PHE, out-of-pocket expenditures in attempting to developing the Fall/Winter collection, lost sales and lost business opportunities, and other foreseeable direct, indirect, consequential, general, and special damages which were within the contemplation of the parties at the time the Licensing Agreement was made.

44.   By reason of the foregoing, Le Bonitas seeks judgment for (a) rescission of the Licensing Agreement, and (b) damages in an amount to be determined at trial but which is not less than $200,000, including but not limited to the amount of the advance payment to PHE, out-of-pocket expenditures made in developing the Fall/Winter collection, and lost sales and lost business opportunities.

WHEREFORE Plaintiff Le Bonitas S.p.A. demands a money judgment against Defendant Paris Hilton Entertainment Inc. for the amounts described herein, together with costs and expenses of this action, and such other and further relief as the Court deems just and proper.

Jury Demand: Trial by jury is hereby demanded.

Dated:  New York, New York
        December 15, 2010

                By:  s/ Martin Garbus
                     Martin Garbus

COUNSEL TO EATON & VAN WINKLE LLP

3 Park Avenue
New York, New York 10016
(212) 779-9910

Counsel for Plaintiff Le Bonitas S.p.A.